WESTHAMPTON RESERVOIR RECREATION CORPORATION *vs.*
ARTHUR R. HODDER.

Hampshire.    September 18, 1940. — November 18, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Equity Jurisdiction*, Laches, Plaintiff's clean hands.

Laches was not shown by mere delay in bringing a suit for the removal
of encroaching structures from the plaintiff's land if no prejudice or
disadvantage to the defendant resulted from the delay.

Conduct of the plaintiff unrelated to the issues in a suit in equity, even if
reprehensible, does not bar the suit on the ground that the plaintiff
did not come into court with clean hands.

BILL IN EQUITY, filed in the Superior Court on November
28, 1938.

Following the confirmation of a master's report, the bill
was dismissed by decree ordered by *Morton*, J.   The plaintiff
appealed.

*R. H. Doran & A. W. Cook*, for the plaintiff, submitted a
brief.

No argument nor brief for the defendant.

QUA, J.   The purpose of this suit is to compel the removal
of structures of the defendant that encroach upon the plain-
tiff's real estate at Pine Island Lake in Westhampton.

The facts have been found by a master.   The plaintiff is
incorporated for such purposes as encouraging aquatic and
athletic exercises, games and sports, promoting the study
and propagation of wild life and providing for the recrea-
tion and social enjoyment of its members.   It owns the
area covered by the waters of Pine Island Lake to high
water mark on the north shore of the lake and also owns
some land bordering the lake.   The defendant owns land
on the north shore above high water mark.   In 1925 the
defendant constructed a one-story building on his land near
high water mark.   From this building he extended into the
lake for a distance of from thirty to thirty-five feet a "dock"

or pier about five feet wide, consisting of a floor built upon poles projecting from the surface of the water. In 1926 the defendant added a float which, except in the winter season, he keeps anchored in the lake about one hundred feet from the end of the "dock." In 1928, 1929 and 1930 the defendant built in the water of the lake along the front of his land, a stone wall about forty-five inches high and so placed that the lower half (approximately) is under water. He filled in behind the wall to a width varying from approximately three feet to approximately twenty-five feet. This took between two hundred and four hundred loads of material. The location of the fill had previously been partly covered by the water of the lake, and in places it had been swampy. "The maintenance of the stone wall and fill . . . in no way injures or damages" the plaintiff. It "beautifies" the shore of the lake. In 1927 or 1928 the defendant erected a large sign. Part of this sign and one supporting pillar are over or upon the plaintiff's land. In his building the defendant runs dances for which admission is charged and conducts a small store, supplying persons occupying cottages at the lake. For a small fee he allows the use of bath houses and of the "dock" and float for swimming and sun bathing. The "dock," the float, the wall and fill, and the sign are all encroachments upon the plaintiff's real estate. The plaintiff's directors have never given the defendant permission to maintain them. The "dock" and the float are maintained in violation of a rule established by the plaintiff requiring such structures to be approved by its directors. The float is hazardous to members of the corporation and their guests using the lake at night. There is no suggestion that the defendant was ignorant as to the boundary line or that he was encouraged or misled by any act of the plaintiff. The defendant himself had given the deed which set up the high water mark as his boundary. On the other hand the plaintiff made no objection to any of these encroachments until October 7, 1938, when it ordered the defendant to remove them. This bill was filed November 28, 1938.

The maintenance of the structures complained of consti-

tutes a continuing trespass against the plaintiff.   Under the rule generally applicable to such situations it is entitled to a mandatory injunction for their removal, even though the damage may be slight and the expense of removal disproportionate.   *Geragosian* v. *Union Realty Co.* 289 Mass. 104, and cases cited.   To require the removal of the stone wall may seem to smack of hardship, but if the plaintiff insists upon this relief, we cannot say that it is going beyond its rights.   The practical effect of what the defendant did was to subtract an area from the plaintiff's lake and to add it to the defendant's land next to his building, where he alone can derive benefit or advantage from it.   So far as appears he did this without excuse and intending this result. The plaintiff has not prayed for the removal of the filling and the restoration of the former shore line.   This case does not disclose mitigating circumstances such as led to the decisions in *Gray* v. *Howell*, 292 Mass. 400, and in the cases there cited.   See *Lynch* v. *Union Institution for Savings*, 159 Mass. 306, 308; *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42; *Marcus* v. *Brody*, 254 Mass. 152.

The trial judge dismissed the bill on the ground of laches and that the plaintiff did not come into court with clean hands.

Laches is an affirmative defence, and has not been pleaded.   The defendant cannot now insist upon it as a matter of right.   *Stewart* v. *Joyce*, 201 Mass. 301, 307. *Hawkes* v. *Lackey*, 207 Mass. 424, 430.   *Adamowicz* v. *Iwanicki*, 286 Mass. 453, 458.   No facts appear which should induce the court in its discretion to deny the plaintiff relief because of delay.   See *North Easton Co-operative Bank* v. *MacLean*, 300 Mass. 285, 294.   No finding of laches has been made.   So far as appears no change has occurred in the position of the parties during the delay. The situation is the same as if suit had been brought upon the completion of each of the structures.   The defendant did not act under an innocent mistake.   He knew at all times without being notified all the facts needed to inform him that his acts were wrongful.   The plaintiff still owns the lake and still has, it would seem, the right to protect

Mass.] WESTHAMPTON RESERVOIR REC. CORP. *v.* HODDER. 291

its ownership. The defendant is still continuing to trespass. He has had the benefit of his trespasses during the interval but has acquired no easement. Laches is not synonymous with mere delay. It commonly implies also some form of prejudice or disadvantage to the defendant. *Boston Rolling Mills* v. *Cambridge,* 117 Mass. 396, 401. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. *Carter* v. *Sullivan,* 281 Mass. 217, 227. *Shea* v. *Shea,* 296 Mass. 143, 149. This element is lacking here. See further *Moore* v. *Dick,* 187 Mass. 207, 212; *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448, 452; *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 286. Moreover the defendant was himself a director of the plaintiff from its incorporation until May, 1929, and until then also held at various times the offices of treasurer, clerk and president. It was the duty of the defendant himself to see that the plaintiff did not lose any of its rights.

The contention that the plaintiff does not come into court with clean hands apparently rests upon findings of the master that shortly before the annual meeting of the plaintiff in 1938 the directors present at a meeting of the board voted to sell twenty shares of treasury stock to one Paine and to receive in payment his note for $2,000; that this stock was "never issued to" Paine, and he never gave his note for it; that Paine, nevertheless, voted as a stockholder at the annual meeting; that partly through his vote directors were elected who were not those for whom the defendant voted; that after the annual meeting the directors voted to repurchase the shares from Paine; and that the purpose of this maneuver was to control the vote at the annual meeting, so that "the affairs of the corporation would not fall into the hands of undesirable people." Even if the transfer of the stock could be said to have been a sham and to have been an act of the plaintiff corporation rather than a wrong perpetrated by certain of its officers against it, still there is no finding that the scheme was directed against the defendant, and in any event no connection appears between this episode and the trespasses of the defendant which had begun long before. The rule of

"clean hands" does not have reference to "a general depravity" of the plaintiff unrelated to the subject matter of the suit. *Lurie* v. *Pinanski*, 215 Mass. 229, 230, citing *Dering* v. *Winchelsea*, 1 Cox, 318, 319. *Beekman* v. *Marsters*, 195 Mass. 205, 214–215. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. A further finding that a number of stockholders petitioned the directors of the plaintiff in August, 1938, in substance that the defendant be requested or required to remove his property from the land or waters of the plaintiff unless the defendant would grant a right of way along the north shore for the benefit of lot owners is clearly an insufficient basis for application of the rule of "clean hands." It does not appear from the findings that the plaintiff was responsible for this request, or that it acted in accordance with it, or that it would have been guilty of any wrong if it had done so.

We are unable to discover in the findings any defence to the bill. The final decree is reversed, and a final decree is to be entered granting to the plaintiff the relief prayed for, except damages, as to which there are no findings, with costs to the plaintiff.

*Ordered accordingly.*