RICHARD A. GOULDING, JR., & another[1] vs. GEORGE W. COOK
& another[2]

Suffolk. January 11, 1996. - March 13, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Constitutional Law,* Taking of property. *Injunction. Trespass. Damages,*
Trespass. *Real Property,* Trespass, Easement.

In an action brought in the Land Court, plaintiffs were entitled to injunc-
tive relief compelling the removal of a septic system the defendants had
installed on plaintiffs' property during the pendency of the litigation
over the locus: the encroachment was not minimal and the defendants
were not entitled to an easement by necessity. [277-280]

CIVIL ACTION commenced in the Land Court Department
on July 31, 1991.

The case was heard by *Marilyn M. Sullivan,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*John H. Wyman* for the plaintiffs.

*Stephen W. Dorsey* for the defendants.

FRIED, J. The plaintiffs in this case (Gouldings) sought an
injunction in the Land Court, enjoining the defendants
(Cooks) to end a trespass on their property. The parties own
neighboring residences in Scituate. When installation of an-
other neighbor's swimming pool caused the Cooks's cesspool,
which was partly under that neighbor's land, to malfunction,
they were forced to find an alternative sewage disposal system.
The town required a septic system, and the only suitable site
for such a system was on a 2,998 square foot triangle of land
that the Cooks claimed belonged to them but which the Goul-
dings claimed was part of their residential property. While
the town was pressing them, the Cooks negotiated with the
Gouldings to no avail. The matter came to litigation. The

[1]Roberta A. Goulding.
[2]Dorothy N. Cook.

Gouldings sought a preliminary injunction against the Cooks's use of their land as well as a declaration that they were the fee simple owners of the land, free of any claims by the Cooks. The preliminary injunction was denied on August 8, 1991, and thereafter the Cooks entered on the land and installed the septic system. The Land Court entered a final judgment on October 7, 1992, finding ownership in the disputed triangle to be in the Gouldings but granting an easement to the Cooks for the maintenance of their septic system "at a price to be negotiated by the parties and with provisions for maintenance, repair and replacement as counsel so agree." The Gouldings appealed from the grant of the easement and the Appeals Court affirmed. 38 Mass. App. Ct. 92 (1995). We granted the plaintiffs' application for further appellate review.

I

It is commonplace today that property rights are not absolute, and that the law may condition their use and enjoyment so that the interests of the public in general or of some smaller segment of the public, perhaps even just immediate neighbors, are not unduly prejudiced. Restrictions from architectural approvals to zoning regulations are accepted features of the legal landscape. See *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365, 395 (1926); *Harris* v. *Old King's Highway Regional Historic Dist. Comm'n*, 421 Mass. 612 (1996). But, except in "exceptional" cases,[3] we draw the line at permanent physical occupations amounting to a transfer of a traditional

---

[3]Compare *Keystone Bituminous Coal Ass'n* v. *DeBenedictis*, 480 U.S. 470 (1987); *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104 (1978), with *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825 (1987); *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). See also *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 309 (1990). "In rare cases, referred to in our decisions as 'exceptional' courts of equity have refused to grant a mandatory injunction and have left the plaintiff to his remedy of damages, 'where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation, or where the substantial rights of the owner may be protected without recourse to an injunction, or where an injunction would be oppressive and inequitable. But these are the exceptions. . . . What is just and equitable in cases of this sort depends very much on the particular facts and circumstances disclosed.' " (Citations omitted.) *Peters* v. *Archambault*, 361 Mass. 91, 93 (1972). See *Franchi* v. *Boulger*, 12 Mass. App. Ct. 376, 379 (1981). "Such cases have been based upon estoppel (see *Malinoski* v. *D.S. McGrath*

estate in land. See *Peters* v. *Archambault,* 361 Mass. 91, 93 (1972), and cases cited therein. See also *Franchi* v. *Boulger,* 12 Mass. App. Ct. 376, 379 (1981), and cases cited therein. And certainly that line, because the interests on either side of it are themselves conventional and the creatures of the law, is often hard to draw. See *Lucas* v. *South Carolina Coastal Council,* 505 U.S. 1003 (1992); *Lopes* v. *Peabody,* 417 Mass. 299 (1994). But we are committed to maintaining it, because the concept of private property represents a moral and political commitment that a pervasive disposition to balance away would utterly destroy. The commitment is enshrined in our Constitutions. Where the line is crossed and the commitment threatened, even in the interests of the general public, just compensation is required. See art. 10 of the Declaration of Rights of the Massachusetts Constitution; Fifth Amendment to the United States Constitution. And by implication, where the encroachment is not for a public use, the taking may not be justified at all. Although we deplore the disposition to turn every dispute into a Federal (constitutional) case and no constitutional claim was — or needed to be — made here, it is to these constitutional commitments that the dissent in the Appeals Court's decision referred when it observed that "[o]ur law simply does not sanction this type of private eminent domain," 38 Mass. App. Ct. 92, 99 (1995) (Armstrong, J., dissenting), citing *Geragosian* v. *Union Realty Co.,* 289 Mass. 104, 109 (1935); *Peters* v. *Archambault,* 361 Mass. 91, 94 n.3 (1972); *Franchi* v. *Boulger,* 12 Mass. App. Ct. 376, 380 (1981). For an analysis that comes to this same conclusion from another perspective, see Kaplow & Shavell, Property Rules Versus Liability Rules: An Economic Analysis, 109 Harv. L. Rev. 713, 757-773 (1996).

No doubt the Cooks considered themselves in desperate straits, but theirs was not the kind of desperation that justifies self-help with financial adjustments thereafter. See *Rossi* v. *DelDuca,* 344 Mass. 66, 70 (1962), and cases cited therein;

*Inc.,* 283 Mass. 1, 10-11 [1933]; *Ferrone* v. *Rossi,* 311 Mass. 591, 594-595 [1942]); or on laches (see [*Geragosian* v. *Union Realty Co.*], 289 Mass. 104, 109-110 [1935], where the earlier decisions are reviewed; cf. *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, 290-291 [1940]); or on the trivial nature of the encroachment or injury (see *Tramonte* v. *Colarusso,* 256 Mass. 299, 301 [1926]; cf. *Goldstein* v. *Beal,* 317 Mass. 750, 758 [1945]). See *Lynch* v. *Union Inst. for Sav.,* 159 Mass. 306, 308-310 [1893]." *Peters* v. *Archambault, supra* at 93 n.2.

*Ploof* v. *Putnam*, 81 Vt. 471 (1908); *Vincent* v. *Lake Erie Transp. Co.*, 109 Minn. 456 (1910). See generally Keeton, Conditional Fault in the Law of Torts, 72 Harv. L. Rev. 401 (1959). It is not cynicism to suppose that some sum of money would suffice to assuage the Gouldings's sense of having been imposed on and thus to suggest that one way of looking at this case is to ask who shall set that sum and where will the bargaining advantage lie. See Restatement (Second) of Torts § 941 comment c, at 583-584 (1979). The Cooks, threatened with possible destruction of their ability to use their home at all, might have been willing to pay a very large sum to be able to obtain this needed facility from the Gouldings. The Appeals Court's disposition may be seen as moved by its revulsion at the thought that the Gouldings should be able to extract so large a rent for so minor an accommodation. The power of eminent domain is granted just to prevent private property owners from extracting such strategic rents from the public. See Epstein, Takings: Private Property and the Power of Eminent Domain (1985). And because of the Gouldings's "lock hand," the Land Court, by denying the Gouldings an injunction, assigned to itself the authority to establish the price at which the easement, 2,998 square feet of the Gouldings's land, shall be transferred to the Cooks.

II

Like most propositions in the law the one we reaffirm now has some play at the margins. Accordingly, the Appeals Court is quite right that the courts will not enjoin truly minimal encroachments, especially when the burden on a defendant would be very great. The classic example is given in Restatement (Second) of Torts § 941 comment c, *supra* at 583:

> "The defendant has recently completed a twenty-story office building on his lot. The work was done by reputable engineers and builders, and they and the defendant all acted in good faith and with reasonable care. It is, however, found that from the tenth floor upward the wall on the plaintiff's side bulges outward and extends over the line. The extent of the encroachment varies at different points, the maximum being four inches."

Such accommodation recognizes the necessarily ap-

proximate nature of all legal lines and principles. To extend the accommodation to this case where the defendants seek to install a potentially permanent, possibly malodorously malfunctioning septic system encroaching on a spatially significant portion of the plaintiffs' lot is not to accommodate the principle but to obliterate it in favor of a general power of equitable adjustment and enforced good neighborliness. That is particularly the case here, where the defendants' "good faith" consists at most in an honest belief supported by objective facts that they were the owners of the land. Although this claim was sharply disputed, they were told that they proceeded at their peril, and the matter was in litigation and awaiting disposition when they went ahead and acted.[4] It changes nothing that what we have here is the Land Court's decision to deny injunctive relief, an equitable power which leaves much to the court's discretion, if that discretion was exercised on a legal criterion that we conclude is incorrect. To draw an analogy, it is the law in this Commonwealth that easements of necessity can only be granted in very limited circumstances of reasonable or absolute necessity. See, e.g., *Supraner* v. *Citizens Sav. Bank*, 303 Mass. 460, 464 (1939), and cases cited therein; *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 101, 105 (1933). If a court were to deny an injunction against trespass on the premise that some wider rule of easements of necessity obtains, we would not hesitate to overturn that exercise of discretion. The same holds here.

As such, we hold that the Cooks must remove the septic system and pay damages.

The judgment of the Land Court is vacated and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

---

[4]Although, as the Appeals Court properly noted, notice of an opposing claim is not decisive on the question of good faith, the instant case presents a situation where there was more than mere notice; the parties were in litigation over the locus. See *Lynch* v. *Union Inst. for Sav.*, 159 Mass. 306, 310 (1893); *Brande* v. *Grace*, 154 Mass. 210, 213 (1891).