Gants, J.
The defendants, Patricia Muse and Leonard Caruso (“Muse and Caruso”), reside with their four young children at 290 North Street in the North End of Boston. In May 2001, they began construction on a four-story addition to their single-story home. The plaintiff, Albert Sorrentino (“Sorrentino”), owns a four-story building next door at 282 North Street. On December 29, 1999, when Muse and Caruso were seeking a zoning variance for their addition, Sorrentino signed a letter declaring that he did not object to their addition. He did not, however, ever grant permission to Muse or Caruso to use his roof as a staging area for the construction of their addition. Muse and Caruso nonetheless allowed their contractor to work off Sorrentino’s roof, who did so openly. On September 14, 2001 and again on September 19, 2001, Sorrentino, through counsel, wrote Muse and Caruso demanding that they cease their trespass upon his roof. The parties and their attorneys met to discuss the matter but, sadly, could not resolve it as neighbors. On October 10, 2001, Sorrentino commenced this action, seeking injunctive relief to bar Muse and Caruso and their contractors from continuing to trespass on his roof. ■
By the time the complaint was filed, Muse and Caruso needed to continue to encroach upon the roof of Sorrentino's building for only two reasons: (1) lead flashing and a rubber membrane needed to be placed between the two properties (and over two to five inches of the northern perimeter of Sorrentino’s roof) in order to prevent water and snow from seeping between the two buildings, and leaking into the Muse and Caruso home; and (2) the Muse and Caruso siding subcontractor needed to use the Sorrentino roof as a staging area for between five and ten business days (weather permitting) to install siding on the new fifth floor of the Muse and Caruso home.
After a hearing held on October 19,2001, this Court granted plaintiff s motion for a preliminary injunction and ordered the defendants, until further order of this Court, to refrain from trespassing on the plaintiffs property. This Court, however, specifically invited the defendants to move for reconsideration once they addressed the following issues:
1. The defendants have a legitimate need to use the plaintiffs roof for two purposes: (1) to seal the gap between the buildings to prevent water damage to the plaintiffs’ property after thunderstorms; and (2) to place vinyl siding on one outside wall of their newly constructed [fifth floor]. To accomplish the first goal, the defendants wish to place flashing that will touch the plaintiffs building and seal water out, but the defendants have failed to provide any expert affidavits establishing either where the water will go that previously fell between the buildings and what the extent of the intrusion of the flashing will be on the plaintiffs property. In short, the defendants have failed to establish that the flashing (and its diversion of rain water) will do no harm to the plaintiffs property and that the touching of the plaintiffs property will pose a minimal, inconsequential intrusion. To accomplish the second goal, the defendants plan to have its workmen stand on scaffolding that will sit on the plaintiffs roof, but the defendants have failed to provide any expert affidavits establishing that this scaffolding (bearing the weight of two men) risks no harm to the plaintiffs roof with the precautions planned. In short, the defendants have failed to identify what steps they will take to minimize the risk of damage to the plaintiffs roof, and what magnitude of risk inevitably remains.
2. Assuming that the defendants can establish that the risks to the plaintiff s property are minimal, the defendants still need to address who will bear the residual risk. The plaintiff should be insured and/or indemnified against any residual risk; the defendants should bear that risk if they are to use the plaintiffs roof for their own benefit.
Preliminary Injunction, October 22, 2001.
The defendants have now moved for reconsideration, filing additional affidavits that they contend have adequately addressed the issues raised by the Court. After hearing, this Court allows the motion for reconsideration and substantially modifies the preliminary injunction.
DISCUSSION
In Massachusetts, the general rule regarding encroachments is that “a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place.” Peters v. Archambault, 361 Mass. 91, 92 (1972). However, the Supreme Judicial Court has recognized that in “exceptional” cases, a court, exercising its equitable authority, may decline to grant an injunction and leave the plaintiff to pursue a remedy in damages. Goulding v. Cook, 422 Mass. 276, 277 & n. 3 (1996); Peters, 361 Mass. at 93. “What is just and equitable in cases of this sort depends very much upon the particular facts *79 and circumstances disclosed.” Goulding, 422 Mass. at 277 n. 3, quoting Peters, 361 Mass. at 93.
The Supreme Judicial Court has defined three categories of trespass that may be deemed so “exceptional” that an injunction barring the trespass may not be warranted:
1. “where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation,”
2. “where the substantial rights of the owner may be protected without recourse to an injunction,” or
3. “where an injunction would be oppressive and inequitable.”
Goulding, 422 Mass. at 277 n. 3, quoting Peters, 361 Mass. at 93. It is plain that the instant case does not present the first category of trespass, since the trespass at issue here is prospective and there cannot be any cost to removing a trespass that has yet to occur. Nor does this case fall into the second category, since Sorrentino’s property rights regarding his roof cannot be entirely protected without an injunction. The issue, then, is whether an injunction would be “oppressive and inequitable” if it barred either {1) the permanent trespass on two to five inches of the northern perimeter of Sorrentino’s roof from the placement of the lead flashing and rubber membrane needed to prevent water leaks, or (2) the temporary trespass on the roof needed to use the roof as a staging area for the placement of siding on the fifth floor of the Muse and Caruso building.
The Supreme Judicial Court has made it clear that trial courts, in determining whether an injunction would be “oppressive and inequitable,” cannot simply balance the hardship that an injunction would cause to the defendants against the hardship that its denial would cause to the plaintiff. Goulding, 422 Mass. at 279-80. Where the intrusion is permanent and significant, a court may not exercise “a general power of equitable adjustment and enforced good neighborliness.” Id. However, the Supreme Judicial Court has also made it clear that trial courts equitably need not “enjoin truly minimal encroachments, especially when the burden on a defendant would be very great.” Id. at 279. See also Peters, 361 Mass. at 93 (injunctions may be denied based “on the trivial nature of the encroachment or injury”). In determining whether the plaintiffs preliminary injunction should continue, then, this Court must determine whether the encroachments that are proposed by the defendants are “truly minimal.”
The Permanent Trespass from the Flashing
This Court finds that the proposed permanent trespass on two to five inches of the northern perimeter of Sorrentino’s roof from the placement of the lead flashing and rubber membrane needed to prevent water leaks is “truly minimal.” This Court is satisfied from the affidavits that have been submitted that this flashing poses no danger to Sorrentino’s roof or to his enjoyment of the roof. Nor does it pose any risk of collateral water damage to any part of Sorrentino’s building. Indeed, if anything, it will reduce the risk of water damage. The only significant adverse consequence of this flashing that Sorrentino can even allege is that, someday, he may wish to add new floors to his building, and he contends that the flashing would prevent such an addition. It is plain that the flashing would not prevent him from constructing such an addition; it would simply need to be removed to allow him to add these floors.
While the encroachment from the flashing is “minimal,” the burden on the defendants if such flashing is not constructed is “very great.” This Court is persuaded that the absence of such flashing has caused water leaks in the Muse and Caruso home, which poses not only a danger to their home and belongings but also to the health of their four young children, who range in age from two months to five years. Therefore, this Court hereby modifies its preliminary injunction, which presently requires the defendants to “refrain from trespassing on the plaintiffs property,” to require the defendants to refrain from trespassing on the plaintiffs property, except to place lead flashing and rubber membrane on two to five inches of the northern perimeter of Sorrentino’s roof. In addition, in the unlikely event that Sorrentino obtains approval to add additional floors to his building and commences such construction, this Court orders that the cost of removing and re-installing the flashing shall be borne by Muse and Caruso.[1]
The Temporary Trespass by the Siding Contractor
In contrast, the temporary trespass proposed to permit the siding contractor to place his scaffolding on Sorrentino’s roof and install the siding from that scaffolding is not “truly minimal.” This Court recognizes that the trespass proposed would last only between five and ten business days (if the weather cooperates), and that the proposed use of the roof is relatively routine for such construction work. Indeed, if the only burden imposed on Sorrentino from such a trespass were the temporary inconvenience of having two or three craftsmen employed by the siding contractor on his roof for two weeks, this Court would find it “truly minimal.” The reason why this Court cannot find this trespass to be “truly minimal” is the significant risks that the use of his roof as a staging area may pose for Sorrentino, primarily: '
the risk of damage to his roof, including the increased wear and tear on the roof from the weight of the scaffolding and the craftsmen installing the siding, which potentially may reduce the effective life of the roof; and *80 the risk of liability in the event that a siding craftsman is injured on his roof or injures another while working on his roof.
The defendants have offered to place rubber pads below the scaffolding and insist that the distribution of their weight on the scaffolding poses little risk to the roof. Yet, this Court has received no evidence regarding the strength of the roof and its ability to bear weight without risk. The defendants have also offered to indemnity Sorrentino for any liability that may be imposed on him, and for any attorneys fees that he may incur. Yet, such agreements to indemnity have value only if Muse and Caruso have the financial means to pay any such judgment and expenses, and no one can predict their solvency in these troubled financial times. The fact of the matter is that, while all these risks may be low in probability, they would impose a substantial financial burden on Sorrentino in the unlikely event they happen, and the defendants have provided nothing akin to insurance against these risks. As long as the trespass, albeit temporary, imposes upon Sorrentino significant financial risk, this Court cannot deem it to be “truly minimal.”
Unless the trespass is “truly minimal,” this Court does not have the authority under the common law to deny the plaintiff an injunction even if the burden imposed on the defendants from such an injunction far exceeds the benefit of the injunction to the plaintiff. Goulding, 422 Mass. at 279-80. See also Feinzig v. Ficksman, 42 Mass.App.Ct. 113, 117-18 (1997). Indeed, even if this Court felt “revulsion” at the thought that the grant of an injunction will permit Sorrentino to extract a large sum of money (or equivalent concessions) in return for a relatively minor accommodation, this Court may not allow such feelings to cause it to deny relief to Sorrentino under the common law against this trespass.
Muse and Caruso, however, seek denial of injunctive relief not only under the common law but also as a matter of statutory law. G.L. 266, §120B provides in pertinent part:
Whoever, being the owner of land abutting that of another, the building or buildings on which are so close to the land of such other person as to require an entry on said abutting land for the purpose of maintaining or repairing said building or buildings in order to prevent waste, shall not be deemed guilty of trespass or liable civilly for damages, provided that such entry is made expeditiously and in the exercise of due care and that no damage is caused by such entry to the land or buildings of said abutting owner . . .
The statute requires, before such entry, that the owner of the abutting land notify the police chief of the city on which the land is located that he has sought permission to enter on the neighbor’s land for the purpose of repairing or maintaining his own property, that the request was denied by the abutting owner, and that he intends to enter pursuant to the statute. G.L. 266, §120B. The abutting landowner, prior to the entry, must also post a $1,000 bond with the chief of police to protect the adjoining landowner from damage that may be caused by the entry. Id. The entry must not last for more than thirty days, and no materials or tools may be kept on the property for more than eight hours on any one day. Id. When the work is done on the adjoining land, the property must be returned to the condition it was in prior to the entry. Id. Muse and Caruso have satisfied each of the required preconditions for entry under this statute. The question is whether this statute applies to the entry sought by Muse and Caruso, that is, whether this entry is “for the purpose of maintaining or repairing said building ... in order to prevent waste.”
Sorrentino contends that this entry is for the purpose of constructing a building, not maintaining or repairing it, and therefore is not covered by this statute. This Court initially shared Sorrentino's view but, upon additional reflection, now interprets the statute differently. It is indeed true that Muse and Caruso are constructing a four-story addition to their building and that the siding is part of the construction of that addition. Yet, it is also true that the addition is already built and, without the siding, it will not be weather-tight and almost certainly will not quality for a Certificate of Occupancy.[2] Consequently, without the siding, the four-story addition will constitute “waste” — both legally and literally. The statute was plainly enacted because the Legislature abhors waste when it can be prevented by a short-term entry onto a neighbor’s property for purposes of maintenance or repair. If the addition is completed except for the siding on the fifth floor, and the addition cannot be used because of that deficiency, it becomes a matter of semantics whether the installation of the siding constitutes a “repair” to the fifth floor exterior wall necessary to weather-proof the building and to obtain a Certificate of Occupancy, or the completion of construction of the fifth floor. If the siding had fallen off, there would be no question that its replacement would be a “repair.” Does it cease being a “repair” if the siding did not fall off but was simply never put on?
What is not a matter of semantics is that the addition will be wasted if the siding work is not completed. Since the installation of the siding can reasonably be deemed a “repair” to a building that will be useless without it, and since the purpose of such a “repair” is to “prevent waste,” this Court finds that the legislative intent of G.L. 266, §120B was to permit an abutter to make a temporary entry to conduct such repairs and avoid this needless waste. This Court is confident that, if the Legislature that enacted G.L. 266, §120B collectively observed a four-story addition to a residential building in the North End sitting vacant because the owner of the adjoining building would not allow entry onto the roof to permit the siding work to be completed, it would have been offended by such *81 waste and believed that the statute it enacted provided a remedy to prevent this waste. In other words, it is appropriate to interpret the language of the statute broadly, but reasonably, in order to further, not frustrate, the legislative intent and purpose. Therefore, pursuant to G.L. 266, §120B, this Court further modifies the preliminary injunction to require the defendants to refrain from trespassing on the plaintiffs property, except to place lead flashing and rubber membrane on two to five inches of the northern perimeter of Sorrentino’s roof and to repair the fifth floor exterior wall by the installation of siding.
ORDER
After hearing, for the reasons detailed above, the defendants’ motion for reconsideration is ALLOWED in that:
1. The preliminary injunction dated October 22, 2001 is modified to require the defendants to refrain from trespassing on the plaintiffs property, except to place lead flashing and rubber membrane on two to five inches of the northern perimeter of Sorrentino’s roof and to repair the fifth floor exterior wall by the installation of siding.
2. In the unlikely event that Sorrentino obtains approval to add additional floors to his building and commences such construction, the cost of removing and re-installing the flashing shall be borne by Muse and Caruso.
3. The entry onto Sorrentino’s roof for the purpose of repairing the fifth floor exterior wall by the installation of siding, in accordance with G.L. 266, §120B, shall not commence until a bond in the amount of $1,000 is posted with the Chief of the Boston Police Department.
4. This temporary entry shall not continue for more than thirty days in the aggregate. No materials or tools, including any scaffolding, shall be stored on the roof for more than eight hours in any one day.
5. Due care shall be exercised throughout this temporary entry. All representations made to the Court in writing concerning the steps that would be taken to ensure due care, including the execution and delivery of the written indemnification agreement (Exhibit 6 to the Motion for Reconsideration), shall be honored with respect to the temporary entry.
6. After this temporary entry, the defendants shall restore Sorrentino’s roof to the condition it was in prior to the entry.

 If they were to sell this property, they may assign this obligation to the purchaser as part of the purchase and sale agreement. In the absence of an express assignment, they shall continue personally to bear this obligation.

 Caruso has said that he fears that even his first floor residence will ultimately lose its Certificate of Occupancy if the siding work is not completed. The record remains unclear on this point.