Agnes, A. J.
Plaintiffs, Rosario and Rose Russo (“the plaintiffs”) sued defendants, Mario and Damiana Gulla (“the defendants”) for trespass. The plaintiffs allege that the placement of defendants’ well wholly on their properly constitutes a continuing trespass. This matter is now before the court on the parties’ cross motions for summary judgment. For the reasons set forth below, plaintiffs’ motion for summary judgment is ALLOWED and defendants’ motion for summary judgment is DENIED.
BACKGROUND
In 1980, the defendants acquired title to the property at 100 Taft Avenue, Methuen, Essex County, Massachusetts. The defendants hired a contractor in 1982 to build their home on the property. The defendants’ contractor also selected a location and then dug a well to provide their home with water.
In 1983, the plaintiffs acquired title to the property at 102 Taft Avenue. This property abuts the defendants’ property for about 180 feet along the westerly side of the defendants’ property. In 1983 or 1984, the plaintiffs surveyed their land and discovered that the defendants’ well was located completely on the plaintiffs’ property. The well begins on the plaintiffs’ property approximately six inches from the parties’ boundary line and extends on the plaintiffs’ property to about 14[3]A inches from the boundary line. The well’s pipe and cap are cylindrical in shape. The white well pipe extends 18 inches above the ground and is attached to an electrical conduit that extends into the ground. When the plaintiffs’ discovered that the defendants’ well was located entirely on their property, the defendants asked the plaintiffs for an easement. The plaintiffs denied their request but told the defendants “not to worry about it” or words to that effect. Subsequently, in 1985, the plaintiffs built a house at 102 Taft Avenue and dug a separate well to supply their drinking and household water.
The parties coexisted for fifteen years until, in 2000, the defendants planted bushes and other greenery around their well on the plaintiffs’ property. This spurred the plaintiffs to install a wooden fence along the entire westerly border between the parties’ property. The fence is six feet high and situated a few inches inside the plaintiffs’ surveyed properly line. Defendants’ former attorney, by letter dated July 27, 2000, alleged that defendants had rights to the well by adverse possession. On August 8, 2000, plaintiffs filed the present suit for trespass against the defendants. The defendants countersued claiming title to the portion of the plaintiffs’ properly by adverse possession. The defendants agreed to dismiss their counter suit with prejudice.
The defendants estimate that a new well would cost approximately $5,395.00 including the installation of a complete pump system.
DISCUSSION
1. Standards applicable to a motion for summary judgment. “Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judg- . ment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony's Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n *50 of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “(a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party's claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
2. The plaintiffs have established grounds for mandatory equitable relief. Massachusetts prohibits one land owner from the permanent physical occupation of another landowner’s property so as to constitute a transfer of a traditional estate in land. Goulding v. Cook, 422 Mass. 276, 277 (1996). The remedy for such a violation is generally an injunction. “The readiness to grant injunctions in trespass cases derives from the historic notion that land is unique and that money is an inadequate substitute, see Chesarone v. Pinewood Builders, Inc., 345 Mass. 236, 240-41 (1962), and from the desire to avoid constitutional doubts which might arise if the trespass were permitted to be the guise for ‘an informal exercise of private eminent domain.’ Peters v. Archambault, 361 Mass. 91, 94 n.3 (1972).” Franchi v. Boulger, 12 Mass.App.Ct. 376, 380 (1981). Thus, in the majority of encroachment cases, the landowner is entitled to removal even “when the encroachment is unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place.” Capodilupo v. Vezzella, 46 Mass.App.Ct. 224, 226 (1999), quoting Peters v. Archambault, 361 Mass. 91, 92 (1972). The fact that the party responsible for the encroachment had a good faith belief that it owned the property does not affect the analysis. Goulding v. Cook, supra. “In rare cases, referred to in our decisions as ‘exceptional,’ courts of equity have refused to grant a mandatory injunction and have left the plaintiff to his remedy of damages, ‘where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation, or where the substantial rights of the owner may be protected without recourse to an injunction, or where an injunction would be oppressive or inequitable.” Peters v. Archambault, supra at 93. “Included in the category of exceptional cases are those where the encroachment is ‘trivial’ or de minimis, in nature.” Capodilupo, 46 Mass.App.Ct. at 227. See, e.g., Octavia v. Sauarese, 338 Mass. 330, 336 (1959) (although defendant acquired prescriptive rights to use of plaintiffs wall because it was obvious that beams from a preexisting structure on defendant’s property were in it and it was used to support an adjoining roof, the defendant had no right to the use of the entire wall and plaintiff was entitled to a mandatory injunction requiring the defendant to take down a new room that was built on top of the preexisting structure); Triulzi v. Costa, 296 Mass. 24, 28 (1936) (a few bricks imbedded in defendant’s wall projected a few inches into plaintiffs wall); Loughlin v. Wright Machine Co., 273 Mass. 310, 315-16 (1930) (sewer pipe was underneath six-inch strip of abutting land and had no effect on owner’s beneficial use of land); Tramonte v. Colarusso, 256 Mass. 299, 301 (1926) (bulge of a building no more than V8-V4 inches). There are no hard and fast rules for determining whether an encroachment is minimal, and each case must be decided on its own facts.[3] See Sorrentino v. Muse, 14 Mass. L. Rptr. 77 (Mass.Super. 2001) (Gants, J.) (proposed permanent trespass on two to five inches of the northern perimeter of Sorrentino’s roof from the placement of the lead flashing and rubber membrane needed to prevent water leaks is “truly minimal”).
The present dispute does not involve a truly minimal encroachment. See Restatement (Second) of Torts §941, Comment c at 583 (1979) (minimal encroachment is described as 4 inches). The well, located between 6 inches and 14% inches from the boundary line, is a significant encroachment on plaintiffs’ property. Further, requiring the defendants to remove the well and build a new one on their property is not a substantial burden. It’s removal will not imperil the defendant’s home or an attached structure. Contrast, Capodilupo v. Vozzella, supra at 227 (removal of encroachment that is from 3.6 to 4.8 inches over about 30 feet of boundary would endanger structural integrity of a building). Both parties agree, moreover, that the defendants are removing water from plaintiffs’ property for their own use. Therefore, this Court finds that the plaintiffs are entitled to a mandatory injunction to remedy the defendants’ trespass, and that defendants must remove their well from the plaintiffs’ property.
ORDER
It is therefore ORDERED that plaintiffs’ motion for summary judgment is ALLOWED and defendants’ motion for summary judgment is DENIED.
Defendants’ are ORDERED and ENJOINED to remove the well from plaintiffs’ property within 90 days. Further, this Court ORDERS Defendants to file a writ *51 ten removal plan within thirty days of this order that specifies the manner and means to be employed in removing the well, the person or persons who will undertake the work, and providing the plaintiff with notice of the date and time of the proposed work. The plaintiff will be allowed 10 days from the date of the filing of the plan to comment on the written plan submitted by the defendant and to request a hearing. If a hearing is requested, the plaintiff shall give notice to the defendant in writing and in that case no work shall be undertaken relative to the removal of the well until further order of the court. If the plaintiff does not request a hearing within the time allowed, the defendant may proceed with removal of the well.

The defendants do not draw any benefit from the doctrine of laches. Mere delay within the period of the statute of limitations does not constitute laches. Scioscia v. Iovieno, 318 Mass. 601, 604 (1945). Laches requires more than mere delay; usually some form of prejudice or disadvantage must be present. Westhampton Reservoir Recreation Corp. v. Hodder, 307 Mass. 288, 291 (1940). Here, the conduct of the defendants in landscaping the area around the well appears to have triggered the litigation. If the defendants had simply waited, they might have acquired legal rights to the land in question. See Hewitt v. Peterson, 253 Mass. 92, 94 (1925).