MIQUEL BRANDAO & another[1] *vs.* DRISCOLL DoCANTO
& another,[2] individually and as trustees.[3]

No. 10-P-816.

Suffolk. February 8, 2011. - August 18, 2011.

Present: KANTROWITZ, MILLS, & VUONO, JJ.

*Practice, Civil,* Findings by judge. *Adverse Possession and Prescription. Real Property,* Adverse possession, Boundary.

In a civil action brought in the Land Court in which the plaintiffs alleged that portions of a condominium structure and fence constructed by the defendants, who owned an adjacent lot, extended over the boundary line on land belonging to the plaintiffs, the judge correctly found that the original fence separating the parcels (which had been removed during the construction) had been built by the plaintiffs' predecessors and marked the boundary between the two properties [154-156] and that the plaintiffs owned the land up to the point where the original fence once stood by adverse possession [156-158]; further, the judge acted within his discretion in ordering the removal of the encroaching portion of the structure, given that the encroachment was neither de minimis nor unintentional [158-161].

CIVIL ACTION commenced in the Land Court Department on June 5, 2006.

The case was heard by *Gordon H. Piper,* J.

*George P. Lordan, Jr.* (*Dennis P. Derrick* with him) for Driscoll DoCanto.

*Thomas M. Looney* for Renda Millsap.

*Katia N. Schuster* for Miquel Brandao.

VUONO, J. The plaintiffs, Miquel and Dulce Brandao, and the defendants, Driscoll DoCanto and Renda Millsap, own adjacent lots in the Roxbury neighborhood of Boston. The plaintiffs have resided on their property since they purchased it in 1980.

[1] Dulce Brandao.
[2] Renda Millsap.
[3] Of 16 Magazine Street Condominium Trust.

DoCanto acquired his property in 2004 and built a two-unit condominium building. In 2005, DoCanto sold one of the units to Millsap.[4] Claiming that portions of the new structure and a newly installed chain-link fence extend over the boundary line on land belonging to them, the plaintiffs brought this action seeking removal of the alleged encroachment. The defendants asserted that the land in question is part of their property. Following a trial, a judge of the Land Court ruled in favor of the plaintiffs and ordered the defendants to remove the encroachment, including a portion of the condominium structure itself. The judgment also indemnified Millsap from all costs incurred in connection with the removal process. We affirm the judgment.

*Background.* We summarize the findings of the judge, reserving some details for later discussion when pertinent to our analysis.[5] The plaintiffs' property is located at 28 Dunmore Street. The defendants own the neighboring corner lot located at 16 Magazine Street. The two parcels were separated by a chain-link fence which, the judge found, was erected by the plaintiffs' predecessors sometime before 1980. The fence existed until 2004 when DoCanto removed it in order to build the condominium building. The original fence enclosed the plaintiffs' side and rear yard. The plaintiffs used the entire yard up to the location of the original fence for a variety of purposes, including growing vegetables and fruits (corn, tomatoes, squash, grapes, strawberries, and peaches) and parking and working on their automobiles. They also maintained the area by cutting the grass and weeding. The judge found that the plaintiffs used the area, including the strip of land adjacent to the original fence, continuously in a manner typical of any family in an urban setting for approximately twenty-four years.

Shortly after acquiring the Magazine Street property,[6] DoCanto

---

[4]Millsap brought a cross claim against DoCanto seeking full indemnification for all damages incurred as a result of the present litigation.

[5]The trial proceeded in two phases. In the first phase, the judge heard evidence relevant to determining ownership of the disputed land. The judge's lengthy and comprehensive decision was read into the record on March 31, 2008, and subsequently transcribed. The judge then heard additional evidence to determine the extent of the encroachment and the appropriate remedy and issued an equally thorough written memorandum of decision and order on April 12, 2010.

[6]DoCanto purchased the property from his father for nominal consideration.

commenced construction of a two and one-half story two-unit condominium building. The construction plans specified that the structure would be built only one foot away from the property line as calculated by DoCanto, a placement the judge characterized as "exceedingly tight." The proximity of the proposed structure to the boundary required a variance, which DoCanto obtained.[7] At some point during the construction project, the original fence was dismantled. The judge found that the "fence was deliberately pushed out and then moved, to accommodate the placement of the foundation" for the new structure. After the condominium building was built, DoCanto erected a new fence, but placed it in a different location. The judge found that the line of the original fence marks the boundary between the two properties, and concluded that the plaintiffs owned the land up to the point where the original fence once stood by adverse possession.[8]

After establishing the location and course of the original fence, the judge found that portions of the new fence and condominium structure encroaches on the plaintiffs' property for a total of 188 square feet. Within this 188 square foot area, the building structure encroaches increasingly for twenty-nine feet along the boundary in a triangular shape for a total of fourteen square feet. The maximum width of the building encroachment is 13.2 inches.

The judge laid the blame for the encroachment entirely on DoCanto, finding that "DoCanto and his contractors and other agents paid no attention to the open and obvious fact that the [plaintiffs'] family was using and exclusively occupying the land up to the fence." Because Millsap had purchased her condominium unit after it had been constructed, the judge exonerated her completely. It is undisputed that the expense of removing

---

[7] DoCanto also sought protection under G. L. c. 266, § 120B, which, subject to certain conditions, permits owners of closely abutting properties to enter upon their neighbors' property for up to thirty days in order to maintain or repair buildings on their own property.

[8] The judge rejected the plaintiffs' claim that they held record title to the disputed area. Each party presented expert testimony regarding the record boundary line. Concluding that "neither of the surveyors' work provide[d] a satisfying, clear indication of where the disputed record property line lies," the judge ruled that the plaintiffs had failed to establish record title to the disputed area. The plaintiffs did not appeal this ruling.

the encroachment is substantial. The estimates range from $120,000 to $430,000, depending on the method chosen. Nevertheless, given the size of the encroachment coupled with DoCanto's "careless (indeed reckless) conduct," the judge concluded that the plaintiffs were entitled to an order of removal. The judge also concluded that the entire cost of removal would be borne by DoCanto alone.

*Discussion.* The defendants challenge the judge's ruling that the condominium structure encroaches upon the plaintiffs' property, asserting error both in the judge's subsidiary findings of fact and in his ultimate determination that the plaintiffs had acquired title to the disputed area via adverse possession. "To prevail on appeal on the basis of an assault on a judge's factual findings is no easy matter, for we accept the judge's findings of fact as true unless they are 'clearly erroneous.' " *Millennium Equity Holdings, LLC* v. *Mahlowitz,* 456 Mass. 627, 636-637 (2010), quoting from *Kendall* v. *Selvaggio,* 413 Mass. 619, 620 (1992). Accord Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). A finding is clearly erroneous when there is no evidence to support it or "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kendall* v. *Selvaggio,* 413 Mass. at 620-621, quoting from *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 792 (1986). "So long as the judge's account is plausible in light of the entire record, an appellate court should decline to reverse it." *Commonwealth* v. *Carr,* 458 Mass. 295, 303 (2010), quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. 501, 510 (1997). This is so even where, had this court been sitting as the trier of fact in the first instance, we might have weighed the evidence differently. *Edinburg* v. *Edinburg,* 22 Mass. App. Ct. 199, 203 (1986).

We turn first to the defendants' challenges to the judge's subsidiary findings of fact. The defendants claim error in the judge's finding that the original fence had been built by the plaintiffs' predecessors. This finding is based on the uncontroverted testimony of the plaintiffs that the fence was present when they purchased their property in 1980 and photographic evidence showing that the original fence was connected to another fence that enclosed the plaintiffs' front and rear yards. Contrary to the defendants' argument, the absence of any direct evidence

regarding the origin of the fence does not render the judge's finding clearly erroneous. Nor will we deem the finding clearly erroneous because, as the defendants claim, the evidence could support an inference that the fence was built by the defendants' predecessors. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 510, quoting from *Gallagher* v. *Taylor*, 26 Mass. App. Ct. 876, 881 (1989). As the defendants have failed to show the judge's finding is not "plausible in light of the entire record," we decline to reverse it.[9] *Commonwealth* v. *Carr*, 458 Mass. at 303.

The defendants also challenge the judge's subsidiary findings that (1) the start of the original fence was in the same location as the "street side terminus" of the new fence installed by DoCanto, (2) the original "fence ran . . . in a straight line," and (3) the original fence ended at the rear of the properties at the fence post (which still exists) located to the east and right of the utility pole at the northernmost corner of the defendants' property. The judge based these findings on photographs taken prior to the removal of the original fence and, notably, on his own observations taken during a view of the property. He concluded that certain existing landmarks, including the utility pole and the old fence post, permitted him to determine the course of the fence with accuracy. The defendants contend that this evidence is "inconclusive" and that other evidence offered at trial is more probative of the original fence's course. In particular, the defendants emphasize testimony by DoCanto and his contractor that the original fence was in the same location as the new one, and point to a survey conducted by their expert depicting the original fence within the defendants' record boundary line. This argument, however, misconstrues the defendants' burden on appeal. "It is not sufficient to challenge the judge's findings by reciting other evidence in the record that [he] may not have credited." *Millennium Equity Holdings, LLC, supra* at 637. The defendants have provided no basis to doubt that the judge, who was in "a superior position to

---

[9]Furthermore, as discussed in more detail, *infra*, the identity of the persons who built the original fence is not a dispositive fact.

appraise and weigh the evidence," *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 161 (1977), carefully considered the conflicting evidence and assigned it the weight he thought appropriate.[10] See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 510 ("[t]he judge's advantage in weighing the testimony is particularly evident in a case involving conflicting testimony"); *Haskell* v. *Versyss Liquidating Trust*, 75 Mass. App. Ct. 120, 125-126 (2009) ("deference is given to the trial judge's credibility assessment of experts"). We decline the invitation "to weigh the evidence supporting [the defendants'] position anew." *First Pennsylvania Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 623 (1985).

Next, the defendants contend that the evidence is insufficient to support the judge's conclusion that the elements of adverse possession have been met, i.e., that the plaintiffs' use of the disputed land was actual, open, notorious, and exclusive. See *Lawrence* v. *Concord*, 439 Mass. 416, 421 (2003), quoting from *Kendall* v. *Selvaggio,* 413 Mass. at 621-622 ("Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years"). "Whether, in a particular case, these elements are sufficiently shown is essentially a question of fact." *Kershaw* v. *Zecchini*, 342 Mass. 318, 320 (1961). We review a judge's findings only for clear error but "we scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v. *Selvaggio, supra* at 621.

The defendants argue that the plaintiffs' use of the disputed area from 1980 onward was insufficient to establish ownership through adverse possession. We disagree. It has long been established that "[t]he nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put." *Kershaw* v. *Zecchini, supra,* quoting from *LaChance* v. *First Natl. Bank & Trust Co.*, 301

---

[10]Further, the judge committed no error in disregarding certain photographs submitted by the defendants in connection with their motion to reopen the evidence. The judge reviewed the photographs, which purported to show that the original fence did not run in a straight line, and rejected them because they did not depict the fence in its original state.

Mass. 488, 490 (1938). To assert dominion, as the judge properly noted, an adverse possessor need only use the property "as the average owner would use it." *Kendall* v. *Selvaggio, supra* at 624. Here, the plaintiffs' testimony (which the judge expressly credited) and the numerous photographs depicting extensive use of the area provided ample support for the judge's finding that the plaintiffs used the land in a manner "customarily associated with an owner's ordinary use of side and rear yards in a densely settled urban setting, including [not only the cultivation of fruits and vegetables but] the mowing of the lawn and weeds, parking and working on and maneuvering cars, outdoor recreation, playing with children, and so forth." This court has often found such uses to be a proper basis for a finding of adverse possession, particularly where, as here, it occurs in a suburban residential area. See *Jones* v. *Gingras*, 3 Mass. App. Ct. 393, 398 (1975) (adverse possession properly found on basis of maintenance of vegetable garden and similar activities); *Masa Builders, Inc.* v. *Hanson*, 30 Mass. App. Ct. 930, 930 (1991) (use which includes vegetable garden, parking cars for repair, and selling of Christmas trees established adverse possession); *MacDonald* v. *McGillvary*, 35 Mass. App. Ct. 902, 904 (1993) (actual use consisting of "little more than maintenance of a suburban lawn" sufficient to establish adverse possession).[11] Moreover, the evidence that the plaintiffs engaged in these activities openly, in a way that was visible not only to the defendant but to the world at large, was not contradicted.

We also reject the defendants' argument that "exclusive" use of the area cannot be established absent proof that the original fence was erected by the plaintiffs or their predecessors in title. As noted, we discern no clear error in the judge's finding that the plaintiffs' predecessors built the original fence. However, even if we were to assume error, the defendants' argument is misplaced because ownership of the original fence is not a prerequisite for establishing exclusive use of the property. Simply put, it matters not who erected the fence. The fence stood in the

[11]The defendants' argument that using the disputed area to grow fruits and vegetables on a seasonal basis only and maintaining the area without making any improvements is not enough to satisfy the actual use requirement for adverse possession lacks merit. See *Lebel* v. *Nelson*, 29 Mass. App. Ct. 300, 302 (1990) (noting that "seasonal uses may establish adverse possession").

same location for at least twenty-four years and, as the judge noted, "was, of course, open and obvious to all for as long as it stood." A claimant's use is "exclusive" for purposes of establishing title by adverse possession if such use excludes not only the record owner but "all third persons to the extent that the owner would have excluded them." *Peck* v. *Bigelow*, 34 Mass. App. Ct. 551, 557 (1993). The defendants do not contend that they, their predecessors in interest, or anyone else ever used or occupied the parcel during this period. As the judge observed, because "the fence effectively excluded others, including strangers and the record owner of 16 Magazine Street," throughout that period, the plaintiffs established that their use of the disputed area was exclusive.

We turn now to the defendants' challenge to the judge's choice of remedy. The defendants argue that, insofar as the encroachment of the condominium building is concerned,[12] the judge erred in not limiting the plaintiffs' remedy to monetary damages. "We examine the judge's imposition of equitable remedies under an abuse of discretion standard." *Demoulas* v. *Demoulas*, 428 Mass. 555, 589 (1998). Under this standard, we will not reverse an outcome unless "no conscientious judge, acting intelligently, could honestly have taken the view expressed by him." *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 502 (1920). Our review of the record leads us to conclude that the judge acted within his discretion in ordering the removal of the encroaching portion of the structure.

"In Massachusetts a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place." *Peters* v. *Archambault*, 361 Mass. 91, 92 (1972). See *Goulding* v. *Cook*, 422 Mass. 276, 277-278 & n.3 (1996). Our decisions have recognized a narrow exception to the general rule favoring removal in "rare" and "exceptional" cases where an order of removal would be, for various reasons, "oppressive and inequit-

---

[12]The defendants concede that to the extent the fencing, porches, and stairs encroach upon the plaintiffs' property, they must be removed.

able." *Id.* at 277 n.3, quoting from *Peters* v. *Archambault, supra* at 93. In determining whether the circumstances of a given case justify overriding the landowner's ordinary entitlement to an injunction, a court must balance the equities by assessing the hardship of removal to the defendant relative to the injury to the plaintiff in light of such factors as (1) the size of the unlawful encroachment, i.e., whether it is de minimis, *Capodilupo* v. *Vozzella*, 46 Mass. App. Ct. 224, 226 (1999); (2) whether it was made innocently; (3) whether "the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation"; and (4) whether "the substantial rights of the owner may be protected without recourse to an injunction." *Goulding* v. *Cook, supra* at 277 n.3, quoting from *Peters* v. *Archambault*, 361 Mass. at 93.

After considering each of the factors enumerated above, the judge determined this is not one of those rare and exceptional cases where an order of removal would be inequitable. We agree. To begin with, the de minimis exception does not apply. *Capodilupo* v. *Vozzella, supra*, upon which the defendants rely, is not to the contrary. In that case, we determined that encroachments of less than five inches by a one-story building, in a built-up area of the North End section of Boston, were de minimis. *Id.* at 227-228. See Restatement (Second) of Torts § 941 comment c, at 583-584 (1979) (describing minimal encroachment as follows: "The extent of the encroachment varies at different points, the maximum being four inches"). By contrast, the encroachment in this case, at its maximum depth, is 13.2 inches, nearly three times larger than the encroachment at issue in *Capodilupo*. In addition, the encroachment in *Capodilupo* burdened only "a small open courtyard which the plaintiff uses to store trash," *Capodilupo* v. *Vozzella, supra* at 227, whereas the encroachment here affects an area which the plaintiffs used routinely for many different purposes.

Nor are we persuaded that the encroachment in this case was unintentional. The defendants contend that DoCanto acted "conscientiously and in good faith" because he surveyed the property to determine the record property line before commencing construction. DoCanto's protestations of good faith, however, are undermined by the judge's finding (for which we find ample

support in the record) that "DoCanto and his contractors and other agents paid no attention to the open and obvious fact that the [plaintiffs'] family was using and exclusively occupying the land up to the fence." DoCanto simply ignored the possibility that his construction project would encroach upon land owned by his neighbor. As such, his assertion that he acted in good faith rings hollow.[13]

The defendants also posit that it is "egregiously unfair" to grant injunctive relief because they could not have reasonably known that the plaintiffs owned the disputed land before title by adverse possession was perfected through the present litigation. Although we are not aware of any cases in which the mandatory removal rule has been applied to land acquired through adverse possession, we see no reason for not doing so. A determination of ownership by adverse possession carries with it an implicit finding that the record owner should have known that a claim may lie. See *Sea Pines Condominium III Assn.* v. *Steffens,* 61 Mass. App. Ct. 838, 844-845 (2004).

Next, the defendants argue that the plaintiffs unreasonably delayed bringing their claim. However, the record shows that the plaintiffs alerted DoCanto about their concerns early on in the construction project. Also, as the project progressed, the area was significantly disturbed, making the existence and scope of any encroachment difficult to discern. Furthermore, the new chain-link fence, which the defendants purported was the permanent boundary line between the properties, was not erected until April, 2006. The plaintiffs asserted their claim in a sufficiently prompt manner by filing suit less than two months later.[14]

Lastly, the defendants argue that the plaintiffs' rights can be

---

[13]The same cannot be said for Millsap. We recognize, as did the judge below, that Millsap is free of any culpability in the creation of the encroachment. However, since the judgment indemnifies Millsap "against all costs and liabilities of, or arising from, the performance of . . . the removal order," her conduct, albeit innocent, does not tip the balance of equities in the defendants' favor.

[14]The defendants' claim that laches bars the plaintiffs' claim fails for the same reasons. See *Srebnick* v. *Lo-Law Transit Mgmt., Inc.,* 29 Mass. App. Ct. 45, 49 (1990) ("A judge may find as a fact that laches exists if there has been unjustified, unreasonable, and prejudicial delay in raising a claim").

fully protected without forcing them to remove the encroachment. They claim that the market value of the encroached land does not exceed $420,[15] and therefore an award of monetary damages is appropriate. We agree with the judge, however, that any remedy short of removal amounts to sanctioning "private eminent domain." See *Goulding* v. *Cook*, 422 Mass. at 277-278 (recognizing that "property rights are not absolute" but emphasizing that equitable exceptions may not be used to "sanction . . . private eminent domain"). While we acknowledge that the cost of removal is substantial, this fact alone is not determinative. *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 118 (1997) (noting that, after *Goulding*, fact that "removal of the encroachments . . . saddles [a defendant] with considerable expense" in relation to "minor impact on enjoyment" by plaintiff is "without legal consequence"). In sum, this case does not present the appropriate facts for the application of an equitable exception, and therefore, we affirm the judgment in its entirety.

*So ordered.*

---

[15]In his brief filed with this court, DoCanto estimates that the value of the land is $340; Millsap estimates that the value is "between $190 and $420."