NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-456

CHRISTINE M. KILLEEN, trustee,[1] & others[2]

vs.

HIGHLAND YARD 5 ASSOCIATES, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Village Forge, Inc., and the trustees of the Ipse Deligo Real Estate Trust (collectively, Village Forge), appeal from a judgment holding that the defendant, Highland Yard 5 Associates, LLC, is the owner of a strip of land across the street from Village Forge's property, free and clear of any rights asserted by Village Forge. In a cross appeal, the defendant maintains that the judge erred in declining to hold that Village Forge's claims were barred by G. L. c. 160, § 88. For essentially the reasons given by the Land Court judge in his well-considered written decision after trial, we affirm.

---

[1] Of the Ipse Deligo Real Estate Trust.
[2] David B. McCarthy, as trustee of the Ipse Deligo Real Estate Trust, and Village Forge, Inc.

Background.  Village Forge has operated a steel fabrication business since 1981 in the Readville neighborhood of Boston. Village Forge's property is located across a private way, known as Industrial Drive, from the defendant's property.  Until 2014, when the defendant acquired it, the defendant's property had been actively used as a rail yard, most recently by the Massachusetts Bay Transportation Authority (MBTA).  Throughout Village Forge's existence, its employees and customers used an area of the defendant's property along Industrial Drive, across from Village Forge's property, for parking personal and commercial vehicles.  Village Forge also used the defendant's property directly across the road from its driveway for maneuvering tractor trailers entering and leaving the driveway. Village Forge contended that it acquired the property it used for these purposes (the disputed property) by adverse possession or, at the very least, that it acquired a prescriptive easement to use the disputed property for parking and truck maneuvering. The judge disagreed.

Discussion.  To establish a prescriptive easement, Village Forge was required to "show by clear proof" that it used the disputed property "in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years" (citation omitted).  Houghton v. Johnson, 71 Mass. App. Ct. 825,

2

835 (2008).  To obtain title by adverse possession, Village

Forge was required to prove, in addition, that such use was

exclusive.  See Ryan v. Stavros, 348 Mass. 251, 262 (1964).

"Whether, in a particular case, these elements are sufficiently

shown is essentially a question of fact."  Brandao v. DoCanto,

80 Mass. App. Ct. 151, 156 (2011), quoting Kershaw v. Zecchini,

342 Mass. 318, 320 (1961).  "We review a judge's [factual]

findings only for clear error but 'we scrutinize without

deference the legal standard which the judge applied to the

facts.'"  Brandao, supra, quoting Kendall v. Selvaggio, 413

Mass. 619, 621 (1992).

The judge concluded that Village Forge did not establish

either adverse possession or an easement by prescription because

Village Forge's use of the defendant's property was permitted

by, and not adverse to, the defendant.  Village Forge argues

that the judge based this conclusion on erroneous factual

findings, improperly considered evidence of the parties' intent,

and mistook mere acquiescence for permission.

1.  Judge's findings of fact.  Village Forge first argues

that the evidence did not support the judge's finding that a

fence existed on the defendant's property in the early 1980s,

with no room for parking off the road along the fence, and that

the MBTA purposefully moved the fence in the mid to late 1990s

to accommodate Village Forge's uses of the disputed property.

3

In making this finding, the judge cited the testimony of John D. Ray.  Village Forge argues that the finding was clearly erroneous because Ray was not sufficiently familiar with the property, because Tina Killeen testified that there was no fence, and because the finding is inconsistent with the judge's findings that Village Forge parked on the disputed property at the same time.  These arguments, however, go to the judge's assessment of the witnesses' credibility and the weight assigned to conflicting evidence, which is entitled to deference.  See Brandao, 80 Mass. App. Ct. at 155-156.  As to the claimed inconsistency, the judge found that Village Forge's parking was not as extensive as its witnesses claimed, and that the fence was frequently damaged and knocked down to the point that it lay on the ground and there were gaps where no fencing existed.  "[T]he judge's account is plausible in light of the entire record," and we are not "left with the definite and firm conviction that a mistake has been committed" (citations omitted).  Id. at 154.

In any event, the existence or state of the fence in the 1980s and early 1990s is largely immaterial because it is undisputed that the MBTA erected a new fence, set back from Industrial Drive and delineating the northern boundary of the disputed property, in the mid to late 1990s.  The legal and factual significance of the creation and location of the

4

replacement fence, to which we turn next, was crucial to the judge's findings regarding whether Village Forge's use was adverse or permissive; whether the MBTA was replacing an old fence or erecting an entirely new one was not.

2. Evidence of intent. Village Forge next argues that the judge erroneously relied on the parties' intentions and beliefs -- specifically, Ray's testimony regarding the MBTA's intent in setting the fence back from the road, and David McCarthy's understanding that Village Forge had the MBTA's permission to use the disputed property -- in concluding that Village Forge's use was not adverse. It is well established that the state of mind of the party claiming adverse possession is not relevant in determining whether the claimant's use of the disputed parcel was adverse. What matters is the physical manifestation of the use, and whether the nature of the claimant's occupancy provides notice to the true owner. See Totman v. Malloy, 431 Mass. 143, 145-146 (2000); Kendall, 413 Mass. at 623-634; Miller v. Abramson, 95 Mass. App. Ct. 828, 831-832 (2019).

The defendant correctly points out that the cases rejecting state of mind evidence concern whether the claimant's use is adverse, not the separate question whether the true owner permitted the use. Granted, there may be some circumstances in which the owner's subjective intent may be relevant in distinguishing between permission and acquiescence. See, e.g.,

5

_Deerfield_ v. _Connecticut River R.R._, 144 Mass. 325, 340 (1887).
In most cases, however, the true owner's intent has little
relevance if that intent is not somehow communicated to the
claimant.  Indeed, in _Church_ v. _Burghardt_, 8 Pick. 327, 328
(1829), on which the defendant relies, it was the "acts and
declarations of the parties," manifesting their intent, that the
court considered relevant.

Nonetheless, the intent to grant permission does not have
to be communicated explicitly.  "Evidence of express or implied
permission rebuts the presumption of adverse use" (emphasis
added).  _Rotman_ v. _White_, 74 Mass. App. Ct. 586, 589 (2009).
Although the judge did refer to Ray's "express purpose on behalf
of the MBTA in placing the fence where it was constructed," the
judge emphasized that it was not the MBTA's intent, but "[t]he
act of constructing the fence thirty feet north of the boundary
of Industrial Drive" that manifested the MBTA's implied
permission for the public, including but not limited to Village
Forge, to make use of the disputed property.  Likewise, the
judge properly relied on McCarthy's testimony that Village Forge
had "an arrangement" with the MBTA as evidence that Village
Forge used the disputed property with the MBTA's permission --
not merely as evidence of Village Forge's subjective
understanding.

6

3. Implied permission versus acquiescence. Village Forge contends that the judge erred by finding that the MBTA's placement of the new fence amounted to implied permission for Village Forge and others to use the disputed property, which would rebut Village Forge's claim of adverse use. Rather, Village Forge argues that the MBTA's actions amounted to mere acquiescence, which would not. See Rotman, 74 Mass. App. Ct. at 589; Houghton, 71 Mass. App. Ct. at 836, 842. While there is no clear line demarking the distinction between the two, the judge aptly observed that relevant factors include acts of dominion and control consistent with ownership. See Mendonca v. Cities Serv. Oil Co. of Pa., 354 Mass. 323, 326 (1968); Houghton, supra at 843.

Considering the MBTA's act of constructing a new fence and where the fence was placed, the judge concluded that "the MBTA did not merely acquiesce in the public's, or Village Forge's use of its land, the MBTA actively and intentionally facilitated the use of its land, so as to create a more orderly situation in the vicinity of its gate to Yard 5." We discern no legal or factual error in the judge's determination that the MBTA affirmatively allowed, rather than passively submitted to, Village Forge's use of the disputed property. Cf. Kilburn v. Adams, 7 Met. 33, 39 (1843) ("where a tract of land . . . is designedly left open and unenclosed . . ., the passage of persons over it, in common with

7

those for whose use it is appropriated, is, in general, to be regarded as permissive, and under an implied license, and not adverse").[3]

4. Other issues. Given Village Forge's failure to prove that its possession was adverse, it was unable to establish its claim for either an easement by prescription or adverse possession. Accordingly, we need not address the judge's finding that Village Forge's possession was not exclusive. Nor is it necessary to reach the question whether, under G. L. c. 160, § 88, Village Forge's use of the disputed property during the years that the MBTA owned the rail yard can be counted toward the twenty-year period of continuous, uninterrupted adverse use necessary to establish both claims.

Judgment affirmed.

By the Court (Massing, Hershfang & D'Angelo, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: June 29, 2023.

---

[3] Because the judge did not err in finding that the MBTA gave implied permission for Village Forge's use, we need not determine whether the doctrine of "neighborly accommodation" has any relevance here.
[4] The panelists are listed in order of seniority.