NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-532

JENNIFER J. GACEK

vs.

MARY C. FOLEY, trustee,[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Jennifer J. Gacek and Mary C. Foley, as trustee of the Kanila Realty Trust, own adjacent properties in Dracut (Gacek property and Foley property, respectively).[3] In 2019, Gacek filed suit against the defendants (collectively, the Foleys) in the Superior Court on a variety of theories including, as relevant here, trespass (count one) and injunctive relief (count six).[4] The Foleys counterclaimed for adverse possession of a

---

[1] Of the Kanila Realty Trust.
[2] Michael P. Foley and Mary C. Foley, individually.
[3] Jennifer J. Gacek owns and lives at 829 Nashua Road; Mary C. Foley, as trustee of the Kanila Realty Trust, owns 833 Nashua Road, where she lives with Michael P. Foley.
[4] Additionally, Gacek made claims in trespass based on stormwater runoff (count two); placement of the Foleys' dock and the Foleys' use of commercial vehicles on their property (count three); violation of G. L. c. 242, § 7A (count four); conversion (count five); and claims in nuisance based on loud music and lights (count seven).

"side yard" portion of the Gacek property abutting the Foley property (count one), declaratory judgment (count two), and prescriptive easement over a portion of the Gacek property (count three); the parties waived any monetary claims against each other. After a jury-waived trial that included a view of the Gacek and Foley properties, judgment entered in Gacek's favor on (1) her claims for trespass and injunctive relief and (2) the Foleys' counterclaims. After careful consideration of the Foleys' appeal from the judgment against them,[5] we affirm.

Discussion. 1. Property boundary. The Foleys argue that the judge erred in his determination of the boundary line between their property and the Gacek property. "When a boundary line is in controversy, it is 'a question of fact on all the evidence, including the various surveys and plans . . . where the true line originally ran, and was to be established.'"[6] Paull v. Kelly, 62 Mass. App. Ct. 673, 679 (2004), quoting Hurlbut Rogers Mach. Co. v. Boston & Me. R.R., 235 Mass. 402, 403 (1920). "The location on the ground today of what was described in the [prior] deed[s] . . . presents a question of fact . . . to be decided 'on all the evidence, including various

_____

[5] Gacek did not appeal from the dismissal of counts two, three, four, five, or seven of her complaint.
[6] To the extent that the Foleys argue that Gacek was required to call an expert witness to carry her burden of proof, they fail to provide any legal support for their contention, and we are aware of none.

2

surveys and plans.'"  Bernier v. Fredette, 85 Mass. App. Ct.

265, 268 (2014), quoting Hurlbut Rogers Mach. Co., supra.  "It

was the judge's task to determine which, if any, of the parties'

approaches correctly located the boundary," and we will not

reverse that determination "[s]o long as the judge's account is

plausible in light of the entire record."  Bernier, supra at

269, quoting Demoulas v. Demoulas Super Mkts., Inc. 424 Mass.

501, 510 (1997).  Reviewing the judge's decision for clear

error, we discern none.  See Brandao v. DoCanto, 80 Mass. App.

Ct. 151, 156 (2011) (standard of review).

The judge's determination of the correct boundary took into

account a variety of evidence; other than as we note below,

there was no objection to the admissibility of that evidence.

First, the judge considered the deeds in the parties' chains of

title, going back to 1965.  The earliest of these was an April

1965 foreclosure deed from Thomas Lindsay to the Lowell Five

Cent Savings Bank (bank).[7]

Next, an August 1965 deed from the bank to the Lafortunes

documented the transfer of a parcel "being shown as Lots 1, 3,

12 and 13 on a [1947 plan], which plan is recorded in [the]

---

[7] The 1965 deed memorialized the transfer of "the premises
conveyed by [the] mortgage" from Lindsay to the bank; the
mortgage itself, however, was not in evidence.  The judge
admitted the deed into evidence over Gacek's counsel's objection
to its relevance.

3

Middlesex North District Registry of Deeds." The August 1965 deed was made "together with and subject to a right of way as shown on [the 1947] plan, extending from Nashua Road to Long Pond" (Lafortune parcel). That deed specified that the property was bounded to the south "by the center line of a fourteen foot right of way as shown on [the 1947] plan, [running] 200 feet, more or less."

Next, in 1969, the Lafortunes subdivided their parcel as reflected in a "compiled plan of land" (1969 plan) that referred back to the 1947 plan. As subdivided, the property included a section designated as "Lot A." In January 1970, a deed (1970 deed) reflected the Lafortunes' transfer to the DeCarolises of "Lot A," as shown on the 1969 plan. The 1970 deed for that property described the bounds of "Lot A" as follows:

> "NORTHERLY by remaining land of the grantors hereunder, 200 feet;
> EASTERLY by Long Pond as shown on [the 1969] plan, 60 feet;
> SOUTHERLY by Lots 2 and 4 as shown on [the 1969] plan,. . . 200 feet; and
> WESTERLY by Lot 5 on [the 1969] plan, 42 feet.
> Said lot is also subject to a seven foot right of way as shown on the [1969] plan to be recorded herewith."

"Lot A" was transferred five more times, the final sale being to Mary C. Foley as trustee of the Kanila Realty Trust. Each successive deed in evidence[8] described the property with

---

[8] It appears that a mortgage foreclosure resulted in a transfer of the property sometime between 1988 and 1993. Neither the underlying mortgage nor that foreclosure deed was introduced

4

reference to the 1947 and 1969 plans and recited metes and bounds consistent with the description in the 1970 deed. Notably, each deed after 1965 referred to the 1969 plan, which measured the property's southern boundary from the midline or "center line" of a fourteen foot right of way at the southern edge of the property.

The judge also considered a variety of other plans relating to the parties' properties. In addition to the 1947 and 1969 property division plans referred to in the deeds, the parties introduced plans prepared by different land surveyors before suit was filed, including a 1993 mortgage inspection plan for the Foley property (Desmarais plan), a 2008 building certification plan of the Foley property (Aho plan), and a 2018 plot plan of the Gacek property that also depicted aspects of the Foley property (Norse plan).[9] Each of these plans placed the boundaries of the relevant properties consistent with the metes

---

into evidence. The Foleys do not contend that this transfer changed the boundaries of their property.
[9] The Norse plan depicted structures and other features on the properties with the boundary line superimposed on encroachments from the Foley property onto the Gacek property.

The parties also introduced a 2010 mortgage inspection plan for the Foley property (2010 plan). The distances of the boundaries depicted on that plan are consistent with those in the deeds from 1970 forward and the Desmarais, Aho, and Norse plans. The 2010 plan also referenced the right of way to the north of the Foley property but did not show where the boundary line was with respect to that right of way.

and bounds descriptions found in the deeds from 1970 forward.

Likewise, each of these plans measured the western boundary of

the Foley property from the center line of the fourteen-foot

right of way at the southern boundary of that land, placing the

boundary in the location ultimately endorsed by the judge.[10]

The boundary line as the judge placed it tracked the

language in each of the deeds in the Foley property's chain of

title from 1970 forward, describing the property using the same

set of metes and bounds and referring to the same 1947 and 1969

property division plans.  Each of those deeds measured the

location of the northern boundary of the Foley property (the

line that also serves as the boundary between the Foley property

and the Gacek property) in the same way, measuring from the

midpoint of a right of way at the Foley property's southern

boundary.  The boundary as the judge placed it was likewise

consistent with the Desmarais, Aho, and Norse plans.  We discern

no clear error in the judge's factual determination, by a

preponderance of the evidence, of that line.  See Bernier, 85

Mass. App. Ct. at 269 (preponderance standard).

_____

[10] The Foleys' argument that the judge erred in relying on "plot
plans" rather than "land surveys" was not raised in the trial
court; indeed, it appears from the record that parties agreed to
the admissibility of the Desmarais, Aho, and Norse plans.  "An
issue not raised or argued below may not be argued for the first
time on appeal."  Century Fire & Marine Ins. Corp. v. Bank of
New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989).

The fact that the Foleys' expert witness, Edward C. Helmes, Jr., testified to his opinion about the existence of a different "potential lot line" dividing the properties in a way more favorable to the Foleys than the line the judge found to exist does not change our view. To the extent that it is implicit in the judge's decision that he did not credit Helmes's opinion or accorded it little weight, we defer to his assessment.[11] See McLaughlin v. Zoning Bd. of Appeals of Duxbury, 102 Mass. App. Ct. 802, 811 (2023).

2. Order to remove encroachments. Having determined that the boundary line between the Foley and Gacek properties lay as depicted in, among other documents, the Norse plan; and that the Norse plan and Gacek's testimony established certain encroachments from the Foley property onto the Gacek property;

---

[11] The Foleys' argument that the judge was required to accept Helmes's opinion of the boundaries of the Foley property based on Helmes's reliance on "a monument" he identified in his inspection of the Foley property is not compelling. Although "[g]enerally speaking, monuments . . . govern over distances" when it comes to deed construction, an exception to this rule exists "where, by strict adherence to monuments, the construction is plainly inconsistent with the intention of the parties as expressed by all the terms of the grant" (quotation and citation omitted). Bernier, 85 Mass. App. Ct. at 269. Here, the first document that references a monument (i.e., a fence post) is the 1969 plan; however, this plan also depicts the southern boundary as extending from the "center line" of a fourteen-foot right of way. Because we conclude that the intended location of the southern boundary was made clear by the language of the plan, it follows that even if the reference to a fence post contravened this language, it was up to the judge to decide which evidence to rely on. See id.

the judge ordered the Foleys to remove the specified encroachments. This injunctive relief is "ordinarily" afforded to a landowner who proves an encroachment. Brandao, 80 Mass. App. Ct. at 158, quoting Peters v. Archambault, 361 Mass. 91, 92 (1972).

> "In rare cases, referred to in our decisions as 'exceptional' courts of equity have refused to grant a mandatory injunction . . . 'where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation, or where the substantial rights of the owner may be protected without recourse to an injunction, or where an injunction would be oppressive and inequitable . . . . What is just and equitable in cases of this sort depends very much on the particular facts and circumstances disclosed.'"

Capodilupo v. Vozzella, 46 Mass. App. Ct. 224, 226 (1999), quoting Goulding v. Cook, 422 Mass. 276, 277 n.3 (1996).

The Foleys offer no persuasive support for their argument that removal is inappropriate because the encroachments are "de minimis" in nature. Our review of the cases suggests that the encroachments, which the judge found to include a shed encroaching by 3.3 feet, a concrete pad encroaching by 3.5 feet, a lamppost encroaching by 1.5 feet, stairs encroaching by 1.4 feet, and a pipe encroaching by 4.5 feet are, in each instance, greater encroachments than those our courts have previously considered "trivial." See Capodilupo, 46 Mass. App. Ct. at 226-227 (collecting cases). Particularly where the Foleys failed to introduce any evidence about the cost of removing the

8

encroachments or the hardship, if any, associated with the removal requirement, we are not persuaded that the Foleys have presented a case that warrants application of the "narrow exception to the general rule favoring removal". Brandao, 80 Mass. App. Ct. at 158-159 (cost of removal a factor judge must consider in "balanc[ing] the equities" of injunctive order for removal of encroachment).

3. Adverse possession and prescriptive easement. The Foleys have likewise failed to convince us that the judge erred in ordering judgment for Gacek on the Foleys' counterclaims for adverse possession of a portion of the Gacek property at or near the boundary line between the parties' parcels (side yard), and prescriptive easement over the "side yard" and "any portion of the Gacek's premises over which the Foleys and their guests and invitees pass and repass for ingress and egress from and to Nashua Road through the right of way to the westerly part of the Foley premises."

"Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." Kendall v. Selvaggio, 413 Mass. 619, 621-622 (1992).

> "[A] claimant may be entitled to a prescriptive easement respecting the land of another if it is shown by clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d)

9

> continuous or uninterrupted over a period of no less than
> twenty years."

Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 43-44 (2007).  "The burden of proving adverse possession is on the person claiming title thereby and 'extends to all of the necessary elements of such possession.'"  Lawrence v. Concord, 439 Mass. 416, 421 (2003), quoting Mendonca v. Cities Serv. Oil Co. of Pa., 354 Mass. 323, 326 (1968).

Even were we to assume that the Foleys' use of the disputed property was "open," "notorious," "adverse," and (as to the adverse possession claim) "exclusive," the Foleys' counterclaims falter on their failure to establish their continuous use of the disputed property for twenty years.  The evidence supported the judge's finding that on April 1, 2018, Gacek had a notice of her intention to prevent the acquisition of the property served on the Foleys, see G. L. c. 187, § 3, and had a no-trespass letter served on the Foleys on March 21, 2019.  There was thus no error in the judge's finding that as of March 21, 2019, Gacek had protected her rights against an adverse possession or prescriptive easement claim.

As to the disputed "side yard," the Foleys' sole witness on the issue of continuous use of the disputed property, Michael Foley, could not establish with any precision the date on which the Foleys' use of the disputed property began.  His testimony

on the subject was limited to his "guess" that it was "close" to twenty years from the time of trial.  Although Foley testified to his recollection that the work that created the encroachments was done in "[19]98, [19]99," there was, as the judge noted, no documentary evidence at trial confirming the dates of that work and the judge was not required to give the Foleys the benefit of the doubt.  See McLaughlin, 102 Mass. App. Ct. at 811.  There was no error in the judge's conclusion that the Foleys failed to establish that their continuous use of the disputed property began twenty years before March 21, 2019.  See Bernier, 85 Mass. App. Ct. at 269 (deference accorded to trial judge's findings of fact and credibility assessments).

The judge did not make specific findings on the Foleys' counterclaim for prescriptive easement over a portion of the Gacek property used for "ingress and egress" from their property.  Given the judge's determination that Gacek failed to prove that the Foleys' vehicles trespassed on her property, however, we conclude that the judge concluded that there was no need for such an easement.  As Gacek has not appealed from the judge's ruling on her trespass claim, we need not address the issue further.

11

4.  Foleys' additional arguments.[12]  The Foleys' spoliation argument based on Gacek's destruction of the old fence post was not raised in the trial court and so is waived.  See Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989).  Even if that were not the case, we fail to discern any basis for sanctions where Helmes had identified the post and its placement before Gacek destroyed it.  See Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 234 (2003) (doctrine of spoliation based on premise that party who has negligently or intentionally lost or destroyed evidence known to be relevant for upcoming legal proceeding should be held accountable for any unfair prejudice that results).

Judgment affirmed.

By the Court (Hand, Hershfang & Brennan, JJ.[13]),

Assistant Clerk

Entered:  March 25, 2024.

_____

[12] The Foleys' claim that the judge's determination of the boundary produced the potential for prohibiting the Foleys and others from accessing their properties does not rise to the level of appellate argument; for that reason, we do not address it.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

[13] The panelists are listed in order of seniority.

12