NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-476

ALAN SMITH

vs.

DECISIONONE CORPORATION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, DecisionOne Corporation, appeals from a judgment issued after remand from a panel of this Court concerning the damages it owes to the plaintiff, Alan Smith, for unpaid commissions. The remand order required the recalculation of the plaintiff's damages to account for the effect of the defendant's FY2013 commission plan. See Smith v. DecisionOne Corp., 98 Mass. App. Ct. 1106 (2020). The defendant argues that the judge's decision after remand misapplied the FY2013 plan and violated the panel's remand order, overpaid the plaintiff for commissions due under the FY2010 plan, and wrongly awarded him bonuses under the FY2010 plan. We affirm with a modification.

Discussion. 1. Effect of FY2013 plan. The parties agree that from April 1, 2012, the effective date of the FY2013 plan, to September 5, 2012, the last day of the plaintiff's

employment, the defendant received revenues totaling $4,312,806.10 from accounts that the plaintiff had acquired for the defendant prior to April 1, 2012, when the FY2010 plan was in effect. The parties stipulated that the plaintiff did not qualify for any commissions under the FY2013 plan; however, they disagree about the effect of that stipulation. According to the plaintiff, he was not entitled to any commissions under the FY2013 plan because it allowed commissions only for new business acquired after the effective date, and he did not generate any revenue that qualified. Nonetheless, he contended that he was eligible to receive commissions under the FY2010 plan attributable to accounts opened while the FY2010 plan was in effect, even if the revenues were received after the FY2013 plan went into effect. According to the defendant, not only did the plaintiff fail to acquire new business under the FY2013 plan, but once the FY2013 plan went into effect, it also made the plaintiff ineligible for commissions based on revenue received after April 1, 2012, attributable to accounts that he had acquired under the FY2010 plan. The judge agreed with the plaintiff.

The judge's determination was properly based on his interpretation of the terms of the FY2013 plan, construed in light of evidence of the parties' past practices. "The interpretation of a contract presents a question of law for the

2

court, except to the extent disputed facts bear upon such interpretation." USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116 (1989). "Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter." Id. The interpretation of an unambiguous contract is a question of law, but the interpretation of the parties' intent with respect to terms that are "ambiguous, uncertain, or equivocal in meaning" is a question of fact. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).

Based on the language of the FY2013 plan, the judge observed that it applied only to "new business revenue," which was defined as "the revenue generated for services that are not already under contract, or a project or service that is not already under contract at a specific value." Thus, the FY2013 plan did not affect the commissions owed under the FY2010 plan for previously existing accounts. The defendant argues that the judge violated basic principles of contract interpretation by failing to give effect to every word and provision and finding ambiguity where there was none. See DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 804 (2013); Freelander v. G. & K. Realty

3

Corp., 357 Mass. 512, 516 (1970). Specifically, the defendant points to language under the heading "Effective Date," which states that the FY2013 plan is effective from April 1, 2012, to March 31, 2013, and "supersedes all previous written or verbal plans." According to the defendant, this language means that any revenue from the plaintiff's accounts received after April 1, 2012, must be allocated to the plaintiff's quota associated with the FY2013 plan.

We agree with the judge that the effective date and "superseding" language does not unequivocally settle the issue; therefore, the judge properly considered evidence of the parties' intent. Based on the testimony of the defendant's sole witness at the remand trial, its general counsel Sandra Ross, the judge found that the defendant's settled practice was that commissions generated under a prior year's plan would be paid according to that plan for at least the twelve-month period in which the revenues were received, even if a new plan went into effect in the interim. The evidence fully supports this finding and resolves any ambiguity in the plaintiff's favor. We do not consider the judge's construction or application of the FY2013 plan in any way to disregard or violate the remand order. Nor does this interpretation permit the plaintiff to earn commissions on the same revenue under two different plans, as the defendant contends.

4

2.  Commissions earned under the FY2010 plan.  The defendant claims that the judge erred in calculating commissions owned under the 2010 plan.  In addition to its assertion that the judge should not have considered the revenues received from the plaintiff's accounts after April 1, 2012, the defendant contends that commissions are paid for only one year after the first sale attributed to a new account; after one year, however, the salesperson is no longer eligible for commissions from that account, even if it continues to generate revenues.  The defendant goes so far as to assert, in a new calculation prepared for the remand hearing, that it overpaid the plaintiff by about $60,000.

The judge gave five reasons for rejecting the contention that commissions were earned for only one year.  Limiting our discussion to the arguments raised in the defendant's brief, we agree with the judge that the FY2010 plan has no unambiguous language limiting commissions to a one-year period, and that both the parties' practices and the drafting history support that conclusion.  We also agree with the judge's rejection of the defendant's claim that it, through its "Administrators," is the sole arbiter and interpreter of what the plan means.  The defendant offered no evidence of any "decisions, determinations [or] interpretations" made by any Administrator of the FY2010 plan.  As the judge pointed out, Ross was not an Administrator

5

as defined by the plan, and her "post-remand assertions" did not reflect the exercise of any power of the plan's Administrators, but were merely legal opinions.

In addition, the defendant argues that the judge erred by awarding the plaintiff commissions on what the defendant characterized at the remand trial as "ineligible" and "non-designated" revenues. In a chalk created by Ross for trial purposes, the defendant allocated certain revenue streams previously credited to the plaintiff in these categories and omitted them from its commission calculation.[1] The judge discredited the defendant's methodology and Ross's testimony, which he found to be different from the methodology the defendant used when the plaintiff was an employee. Likewise, the judge discredited the plaintiff's inflated claim of unpaid commissions. The judge's credibility determinations are entitled to deference, and we do not set them aside unless clearly erroneous. See Brandao v. DoCanto, 80 Mass. App. Ct. 151, 155-156 (2011); Rood v. Newberg, 48 Mass. App. Ct. 185, 191 (1999). Except in one minor respect, the judge's calculation of commissions under the FY2010 plan is not clearly erroneous.

_____

[1] While the data underlying Ross's calculations may have been supported by business records, Ross's summary and color-coding of Exhibit 72, prepared after the fact for trial purposes, do not qualify as business records. See Mass. G. Evid. § 803(6)(A) (2023).

6

We do agree with the defendant that the judge made a clear error in adding the revenue for calendar year 2012 -- coming up with a sum of $7,489,466.41 instead of $7,484,466.41 -- which resulted in awarding the plaintiff an extra $133.34 in commissions.[2]  The judgment should be reduced by that amount.

3.  Bonuses.  Finally, the defendant argues that the judge erred in crediting the plaintiff's testimony and finding that he was owed $17,500 in unpaid bonuses.  Based primarily on the defendant's treatment of the Sears/Kmart, Best Buy, and Hilton accounts in its business records, the judge rejected the defendant's argument that the extension of the IBM account to these new end users did not qualify as new accounts.  We discern no error of law or clear error of fact in the judge's determination that the plaintiff was entitled to bonuses for those three accounts.

Conclusion.  The judgment is modified to reflect that the plaintiff is entitled to damages in the amount of $166,051.44, together with statutory costs and interest at the rate of twelve

---

[2] Accordingly, the judge should have multiplied $4,484,466.41 by the commission rate of .02667, resulting in a product of $119,600.72 instead of $119,734.06 -- a difference of $133.34.

7

percent per annum from the date of the breach of contract, October 31, 2012, and as so modified, the judgment is affirmed.

<u>So ordered</u>.

By the Court (Vuono, Massing & Toone, JJ.[3]),

Assistant Clerk

Entered: April 18, 2024.

---

[3] The panelists are listed in order of seniority.