NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-479

ROBERT A. JOHNSON, THIRD

vs.

ARTHUR HOLBROOK & another;[1] DIANE JOHNSON, defendant-in-counterclaim.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The parties own adjacent properties in Uxbridge.  The plaintiff, Robert A. Johnson, III, brought an action alleging trespass by the defendants, Arthur and Lisa Holbrook, on a portion of his land.  The defendants counterclaimed against the plaintiff and his wife, Diane Johnson, asserting title to that area by adverse possession.[2]  After a bench trial in the Superior Court, which included a view of the disputed land, a judge

---

[1] Lisa Holbrook.

[2] Robert and Diane Johnson were named as defendants-in-counterclaim.

awarded the defendants title by adverse possession.[3]  The plaintiff and his wife appeal, maintaining the judge's findings were clearly erroneous.  We affirm.

Background.  We recount the essential facts as found by the judge.  The disputed land includes (1) a section of the plaintiff's property adjacent to the defendants' driveway, which extends the driveway from the defendants' property onto the plaintiff's land (turnaround); and (2) a grass strip of land behind the turnaround up to the plaintiff's back property line.  Although the disputed land appeared to "the naked eye" to be on the defendants' property, the parties knew and had discussed, shortly after the defendants purchased their property in October of 1994, that the now-disputed area was the plaintiff's property.

Since the plaintiff bought his property in 1978, the previous owners of the defendants' lot had used the turnaround to facilitate turning around in their driveway by permission of the plaintiff.  This use continued, by mutual agreement, and with full awareness that the plaintiff owned the turnaround area, after the defendants bought their property in 1994.  The plaintiff testified that permission to use the turnaround was

_____

[3] We treat the judge's order for entry of final judgment as the final judgment in this matter.

2

limited to "parking and turning," and did not include permission to use the area behind the turnaround.[4]

From the time they moved in, the defendants used the disputed land -- both the turnaround area and the area behind it, up to the back property line -- as if it were their property. Among other uses, they placed a temporary basketball hoop in the turnaround and their children played there. They stored large items and repaired vehicles there.

The defendants also mowed and maintained the area behind the turnaround; installed a small wooden fence; set up a doghouse, then later a dog kennel; and buried their pets there. The defendants made several other substantial changes to this area.

The magnitude and consistency of the defendants' use was such that the plaintiff would have been able to see it from his property. The encroachments on the area behind the turnaround were visible from the defendants' property, where the plaintiff had been on several occasions.

In September 2017, the defendants repaved their driveway, including repaving the turnaround on the plaintiff's property.

---

[4] Although the judge did not find specifically that the plaintiff had given permission for parking, the plaintiff so testified, and the judge generally credited his testimony regarding the scope of the permission he gave.

3

The paving expanded the outline of the turnaround and encompassed the area that the defendants had been using since 1995.

The plaintiff confronted the defendant about repaving without his permission. The plaintiff then hired a surveyor, establishing the boundary lines and confirming that the repaved turnaround and the encroachments behind it were both located on the plaintiff's property. This suit followed.

Discussion. 1. Standard of review. "[W]e accept the judge's findings of fact as true unless they are clearly erroneous." Kendall v. Selvaggio, 413 Mass. 619, 620 (1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 620-621, quoting J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 792 (1986). "So long as the judge's account is plausible in light of the entire record, an appellate court should decline to reverse it" (citation omitted). Brandao v. DoCanto, 80 Mass. App. Ct. 151, 154 (2011). "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts." Kendall, supra at 621.

4

2. Adverse possession. The plaintiff and his wife (i.e., the defendants-in-counterclaim) challenge (1) the judge's ruling that the use of the turnaround area was adverse because it exceeded the limited permission given by the plaintiff and (2) the conclusion that the use of the area behind the turnaround was open and notorious.

a. Adverse use of turnaround area. "Title can be acquired by adverse possession only upon proof of 'nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years.'" Mancini v. Spagtacular, LLC, 95 Mass. App. Ct. 836, 841 (2019), quoting Lawrence v. Concord, 439 Mass. 416, 421 (2003). "The burden of proving adverse possession is on the person claiming title thereby and extends to all of the necessary elements of such possession" (quotation and citation omitted). Lawrence, supra at 421. "Whether, in a particular case, these elements are sufficiently shown is essentially a question of fact." Kershaw v. Zecchini, 342 Mass. 318, 320 (1961).

"The essence of nonpermissive use is lack of consent from the true owner." Totman v. Malloy, 431 Mass. 143, 145 (2000). "Whether a use is nonpermissive depends on many circumstances, including the character of the land, who benefited from the use of the land, the way the land was held and maintained, and the

5

nature of the individual relationship between the parties claiming ownership." Id. "The acts constituting adverse possession must be inconsistent with the owner's rights; otherwise, they would not place the owner on notice of the competing claim of right." Sea Pines Condominium III Ass'n v. Steffens, 61 Mass. App. Ct. 838, 847 (2004).

Here, the judge found that the plaintiff had given limited permission to use the turnaround and ruled the defendants' use was adverse because it exceeded the scope of that permission. On this record, we cannot say that these findings are clearly erroneous.

The plaintiff testified that (1) the original permission with the defendants' predecessors in title was for "parking and turning," to facilitate convenient access to the roadway; (2) he consented to extend the agreement to the defendants "as long as it [was] not abused"; and (3) he did not give the defendants permission to set up a basketball hoop, nor to place horse trailers or other "non-vehicular" objects on the turnaround. When the plaintiff took issue with the defendants' repaving of the turnaround, he objected to this excessive use, saying, "it's not turning." This testimony supported the finding that the plaintiff gave only limited permission to use the turnaround.

The judge credited the plaintiff's description of the contours of his limited permission. In stark contrast to that limited permission, and as recounted in more detail above, the evidence supported the judge's finding that the defendants used "the turnaround area as property that they owned in full," exceeding the scope of the plaintiff's limited permission. See Mancini, 95 Mass. App. Ct. at 842 (installation of basketball hoop and maintenance of surrounding area established adverse possession); Brandao, 80 Mass. App. Ct. at 157 ("working on and maneuvering cars, outdoor recreation, playing with children" are land uses "customarily associated with an owner's ordinary use of side and rear yards"); MacDonald v. McGillvary, 35 Mass. App. Ct. 902, 904 (1993) (adverse possession where claimant's use "consisted of little more than maintenance of a suburban lawn").

By acquiescing in the defendants' conduct, the plaintiff did not permit them the broader use of the turnaround. See Rotman v. White, 74 Mass. App. Ct. 586, 590 (2009) ("acquiescence, or tacit agreement, by an owner, to the adverse use of his property is not the same as granting permission"). "There was no recognition by the [defendants] of authority in the [plaintiff] to prevent or permit continuance of the use. It is the nonrecognition of such authority at the time a use is made which determines whether it is adverse; and permissive use

7

is inconsistent with adverse use" (citation omitted).  <u>Shaw</u> v. <u>Solari</u>, 8 Mass. App. Ct. 151, 156 (1979), quoting <u>Ryan</u> v. <u>Stavros</u>, 348 Mass. 251, 263 (1964).  We discern no error.

b.  <u>Open and notorious use</u>.  The plaintiff and his wife also maintain that the judge erred in finding the defendants' use of the area behind the turnaround to be open and notorious.  "To be 'open,' a use must be 'without attempted concealment.'"  <u>Mancini</u>, 95 Mass. App. Ct. at 845, quoting <u>Boothroyd</u> v. <u>Bogartz</u>, 68 Mass. App. Ct. 40, 44 (2007).  "To be 'notorious,' a use must be sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property" (quotation and citation omitted).  <u>Mancini</u>, <u>supra</u>.  "The purpose of the requirement of 'open and notorious' use is to place the true owner 'on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action.'"  <u>Lawrence</u>, 439 Mass. at 421, quoting <u>Ottavia</u> v. <u>Savarese</u>, 338 Mass. 330, 333 (1959).

After viewing the property, the judge found that the defendants' encroachments behind the turnaround were "open and obvious to anyone observing the property."  The photographs and video recording in evidence support this conclusion.  The plaintiff's assertions that he did not see the encroachments

8

when he visited, or could not see them through the trees from his side yard, do not render the judge's finding erroneous. See Lawrence, 439 Mass. at 422 (open and notorious use places "the true owner on constructive notice of such use, and it is immaterial whether the true owner actually learns of that use or not"). The judge could conclude that "a reasonable degree of supervision," Mancini, 95 Mass. App. Ct. at 845, quoting Boothroyd, 68 Mass. App. Ct. at 44, would have included the plaintiff's walking between or around his trees to keep informed of what was happening on that part of his property lying beyond the trees. We discern no error in the judge's finding that the use was open and notorious. See Mancini, supra (construction of basketball court and maintenance of disputed area was open and notorious). See also Foot v. Bauman, 333 Mass. 214, 216-217 (1955) (several visible manholes, plus regular entry onto land for inspection and maintenance, rendered underground sewer line sufficiently open and notorious); Poignard v. Smith, 6 Pick. 172, 178 (1828) ("building a fence around the land or erecting

buildings upon it" are acts of notoriety that give "notice to all the world").

                                    Judgment affirmed.

                                    By the Court (Sacks,
                                      Hershfang & Tan, JJ.[5]),

                                    *Paul Little*

                                    Clerk

Entered:   July 18, 2025.

---

[5] The panelists are listed in order of seniority.